WAH TIM CHOCK, M.D., Appellant, *v.* MARY G. F. BITTERMAN, Director of Department of Regulatory Agencies, and BOARD OF MEDICAL EXAMINERS, State of Hawaii, Appellees

NOS. 9086 AND 9193

(CIVIL NO. 69103)

MARCH 1, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this consolidated appeal (Nos. 9086 and 9193) Dr. Wah Tim Chock (Appellant) seeks appellate review of the circuit court's decision: (1) affirming the Board of Medical Examiners' (Board) final order suspending Appellant's medical license for five years and (2) denying his motions to reconsider and to set aside the court's order.

Appellant raises the following issues on appeal: (1) whether the Board's findings of fact are clearly erroneous; (2) whether the hearing officer's denial of discovery adversely affected the Appellant's rights; (3) whether the Board adequately examined the record of the hearing officer prior to rendering its final order; (4) whether certain members of the Board were disqualified from participating in the final decision and order; and (5) whether Appellant was adversely affected by an unreasonable delay in the filing of the complaint. We find no error and affirm.

## FACTS

Appellant was duly licensed to practice medicine and surgery in the State of Hawaii in January 1944 pursuant to Hawaii Revised Statutes (HRS) chapter 453 (1976).

On July 5, 1976, a minor male, "CA", age 5, was admitted to then Kauikeolani Children's Hospital (Hospital). The next day, July 6, two other minor males, "RA" (CA's younger brother), age 2 and "DA" (first cousin to CA and RA), age 4, were also admitted to the Hospital.

The three children had all been under the care of Appellant beginning at or soon after their respective births and continuing until just prior to their being hospitalized. Under Appellant's direction, the children were orally administered 5 mg. of steroid pre-

dnisolone daily for allergic rhinitis (hay fever).[1] In June 1976, all three children contracted varicella (chicken pox), whereupon Appellant ordered the prednisolone intake stopped immediately. The children became ill and were admitted to the Hospital, where they were examined by Scott T. Himeda, M.D., Robert Wilkinson, M.D., and Robert D. Bart, Jr., M.D.[2] The concurring diagnosis by the three doctors was that all three children were suffering from steroid complications.

In September 1976, the Hospital Peer Review Committee informed Appellant of its intention to suspend his privileges at the Hospital for the "inappropriate use" of prednisolone, which had resulted in the hospitalization of the children with the steroid complications. On December 21, 1976, Appellant was notified by the Board that the peer review decision had been filed with them and was being reviewed.[3]

On December 14, 1977, the Board decided to proceed with a disciplinary hearing pursuant to HRS § 453-8 (1976, as amended), and requested the State Attorney General to initiate such proceeding. On August 19, 1980, the Attorney General initiated proceedings by filing a verified petition to revoke, limit, or suspend Appellant's medical license. The petition alleged that Appellant violated HRS §§ 453-8(10) and (12). At that time, HRS § 453-8[4] provided in pertinent part as follows:

> *Revocation, limitation or suspension of licenses.* Any license to practice medicine and surgery may be revoked, limited, or suspended by the board of medical examiners at any time in a

---

[1] The steroid medication had been administered daily for approximately 18 months to RA, approximately 4 years and 9 months to CA, and for approximately 3 years and 9 months to DA.

[2] Dr. Himeda was doing his rotating internship at the Hospital during 1976. Dr. Wilkinson was a pediatrician specializing in blood diseases and cancer; licensed in the state since 1972. Dr. Bart was a child neurologist at the Hospital since 1972; Board certified in pediatrics (1970) and child neurology (1972).

[3] Peer review committees are required to report every adverse decision to the Board by HRS § 663-1.7, and the Board is required to review such decisions by HRS § 453-8.3.

[4] HRS § 453-8 was amended by Act 92, § 5, 1983 Haw. Sess. Laws 150, 155, effective May 21, 1983.

proceeding before the board for any one or more of the following acts or conditions on the part of the holder of such license:

. . . .

(10) Professional misconduct or gross carelessness or manifest incapacity in the practice of medicine or surgery;

. . . .

(12) Consistently utilizing medical services or treatment which is inappropriate or unnecessary[.]

The Board appointed a hearing officer in accordance with Rules 3.31(a) and 3.33, Rules and Regulations of the Board of Medical Examiners (RRBME) (1979), to conduct a hearing and submit written findings of fact, conclusions of law, and a recommended decision.

After some delay caused by numerous discovery requests, objections, pre-trial conferences and continuances, the hearing was held on April 27 and April 28, 1981. During the hearing, the State called and examined Dr. Himeda and Dr. Wilkinson. Appellant did not call any witnesses although he had filed two lists naming at least ten defense witnesses. Instead, Appellant relied solely upon cross-examination of the State's witnesses and procedural defenses.

On June 29, 1981, the hearing officer submitted to the Board his findings of fact, conclusions of law, and proposed decision recommending that the Board dismiss the HRS § 453-8(10) charge but uphold the HRS § 453-8(12) charge for administering inappropriate medical treatment. The hearing officer further recommended that Appellant's medical license be suspended for not less than one (1) year, although the suspension could be reduced upon compliance with certain terms and conditions.

Appellant, in accordance with HRS § 91-11, filed written exceptions to the hearing officer's findings of fact, conclusions of law and recommended order. In response, the State filed a memorandum in support of the hearing offi ' findings and conclusions. On October 21, 1981, the Board ·d oral argument on Appellant's exceptions.

On December 16, 1981, i ;oard issued a final order adopting the hearing officer's findin₂ f fact and conclusions of law but ordered Appellant's license s· ₂nded for a period of five (5) years subject to reduction upon con ₂ance with certain terms and conditions.

On January 15, 1982, Appellant appealed the Board's order to the circuit court. Hearings were conducted on August 5 and 19, 1982. On August 27, 1982, Appellant filed a motion asking the court to reconsider the arguments he had made regarding the authority of some of the Board members to act in this matter. The court entered its order affirming the Board on September 28, 1982. On October 6, 1982, Appellant moved to set aside the September 28 order on the grounds that it was premature because his motion for reconsideration had not been heard and that the matter was stayed by his filing of a petition for writ of mandamus in the supreme court on August 24, 1982. On October 26, 1982, Appellant filed a notice of appeal from the September 28 order. On January 4, 1983, the court denied both motions and Appellant filed a notice of appeal of that order on January 11, 1983. Although Appellant's various motions and notices of appeal have created some confusion regarding appellate jurisdiction, we do have jurisdiction.

Since Appellant has not included the denial of his motions to reconsider and set aside as error by the court in his statement of points on appeal, in violation of Rule 3(b)(5), Rules of the Supreme Court (RSC) (1983), and has not argued those matters in his brief, we will not consider the issue. *Bloudell v. Wailuku Sugar Co.*, 4 Haw. App. 498, 669 P.2d 163 (1983); *John Wilson Enterprises, Ltd. v. Carrier Terminal Service, Inc.*, 2 Haw. App. 128, 627 P.2d 294 (1981); *City and County of Honolulu v. Manoa Investment Co.*, 1 Haw. App. 52, 613 P.2d 662 (1980).

Further, we hold that Appellant's motion to reconsider was nothing more than an attempt to renew arguments already made to the court and was not authorized by the Hawaii Rules of Civil Procedure. *See K. M. Young & Associates, Inc. v. Cieslik*, 4 Haw. App. 657, 675 P.2d 793 (1983). Therefore, the motion had no effect on the court's authority to issue the order affirming the Board's decision. Furthermore, there is nothing in the record to indicate that the proceedings were stayed by the petition for mandamus. Therefore, the October 26, 1982, notice of appeal was timely.

## I. STANDARD OF REVIEW

This appeal asks us to review the decision made by the circuit court in its review of the Board's decision, and is a "secondary"

appeal. The standard of review in such cases is one in which we must determine whether the lower court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g)[5] to the agency's decision. *Outdoor Circle v. Harold K. L. Castle Trust Estate,* 4 Haw. App. 633, 675 P.2d 784 (1983). Our review is further qualified by the principle that the Board's decision carries a presumption of validity and Appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences. *In re Hawaii Electric Light Co.,* 60 Haw. 625, 630, 594 P.2d 612, 617 (1979); *In re Kauai Electric Division of Citizens Utilities Co.,* 60 Haw. 166, 187, 590 P.2d 524, 538 (1978); *see Outdoor Circle, supra.*

## II. REVIEW

We therefore apply the above standards to our review of the errors alleged by Appellant to have been committed by the Board and the lower court.

### A. SUBSTANTIAL EVIDENCE

Appellant asserts that the crucial findings of fact as adopted by the Board are based exclusively on the testimony of the State's medical witnesses.[6] Because the testimony was based on what the children's mothers had told them about Appellant's prescription

---

[5] HRS § 91-14(g) (1976, as amended) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[6] Two of the doctors, Himeda and Wilkinson, testified at the hearing before the hearing officer. The deposition of Dr. Bart was received in evidence.

and dosage instructions, Appellant argues that the testimony was inadmissible hearsay and, therefore, the findings are not based on reliable, probative, or substantial evidence.

In regard to the receipt of evidence in contested cases, the hearing officer and the Board are bound by HRS § 91-10(1) (1976), which provides in pertinent part:

> Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. . . .

In construing that statute the supreme court has held that the legislative history indicates that the statute is intended to direct administrative agencies to admit any and all evidence presented to them "limited only by considerations of relevancy, materiality and repetition." *Cazimero v. Kohala Sugar Co.*, 54 Haw. 479, 483, 510 P.2d 89, 92 (1973). Additionally, the supreme court stated that like its federal counterpart, 5 U.S.C.A. § 1006(C), the general purpose of the statute is to "free administrative agencies from the bounds of any technical rules of evidence," and its intent was to require agencies "to admit evidence that would have been inadmissible in common law trials." *Id.*

In *Shorba v. Board of Education*, 59 Haw. 388, 583 P.2d 313 (1978), the supreme court, in keeping with the wide discretion accorded to administrative agencies in the admission of evidence, held that the admission of irrelevant or incompetent evidence by an agency does not constitute reversible error, if there is substantial evidence in the record to sustain the agency's determination. *See also In re Hawaiian Telephone Co.*, 65 Haw. 293, 651 P.2d 475 (1982).

In the instant case, the record shows that there is other reliable, probative and substantial evidence to support the findings challenged by Appellant and the admission of the hearsay testimony of the doctors was not reversible error.

The doctors obtained from the children's parents the medication they had been administering to the children. The pharmacy at the hospital identified the medication as prednisolone, 5 mg. The physical symptoms exhibited by the children were of the type the doctors

described as resulting from the administration of steroids. The doctors testified that using steroids to treat allergic rhinitis is improper, and that administration of steroids to young children should be avoided. The doctors also testified that steroids should be administered only for short periods because of possible adverse side effects.

## B. DENIAL OF DISCOVERY

Appellant argues that the hearing officer abused his discretion by wrongfully denying his request to take depositions of the children, their parents and "all witnesses listed" by the State.

In a pre-hearing order, dated January 26, 1981, the hearing officer had set the deadline of February 4, 1981, at 4:30 p.m. for the filing of applications for depositions and had directed that the applications be in compliance with Rule 3.28, RRBME. Appellant's request was dated February 2, 1981, but was not received and filed with the hearing officer until February 5, 1981.

By order dated February 6, 1981, the hearing officer denied Appellant's request to take depositions, holding that his application was untimely and failed to comply with Rule 3.28, RRBME, in that it sought to take depositions of non-witnesses and failed to show good cause.

Rule 3.28(a) and (b), RRBME, provide:

(a) *Application.* Upon the application of a party or [sic] a proceeding and for good cause shown, the Board or the Hearing Officer may at any time after the filing of the complaint order the taking of testimony by oral deposition or by deposition upon written interrogatories.

(b) *Cause.* Any party desiring to take the deposition of a witness shall make application in writing to the Board or the Hearing Officer setting out the reasons why such depositions should be taken, the character of the deposition, the time when, the place where, and the name and post office address of the person before whom such deposition should be taken, the name and post office address of each witness, and the subject matter concerning which the witness is expected to testify. If good cause be shown, an order containing such instructions will be made and served upon the parties.

Rule 3.28 establishes three threshold requirements before depositions may be ordered. *First,* an application must be submitted; *second,* the requested depositions must be of a witness; and *third,* the applicant must show good cause. Only upon the satisfaction of these three requirements can the Board or the hearing officer exercise his discretion and order the depositions.

We hold that the hearing officer did not abuse his discretion in denying the application for depositions. Rule 3.28 gives the hearing officer discretion to order discovery, and his order will not be set aside absent a clear abuse of discretion. Appellant did not have an absolute right to discovery, but could have discovery only in accordance with the rule. *Wakabayashi v. Hertz Corp.,* 66 Haw. 265, 660 P.2d 1309 (1983); *Iwamoto v. Hirata,* 49 Haw. 514, 422 P.2d 99 (1966); *Appeal of Goodfader,* 45 Haw. 317, 367 P.2d 472 (1961). Appellant's request made no attempt to comply with the rule.

## C. EXAMINATION OF THE RECORD

Appellant claims as error that members of the Board violated HRS § 91-11 (1976) because they failed to examine the record adequately prior to rendering the final decision.

Section 91-11, HRS, which sets out the procedure to be followed by an agency in cases where a hearing officer has been employed, provides as follows:

> *Examination of evidence by agency.* Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

Appellant's only complaint on this issue is that the Board members rendered the final decision and order without examining the

prior hearing transcripts or any portion of the record.[7] He argues that his testimony at an April 2, 1982, circuit court hearing on his March 29, 1982, motion to stay enforcement of the Board's order indicated that at the Board's October 21, 1981, hearing, the Board members admitted their unfamiliarity with the record. He contends, therefore, that they failed to adequately review the record prior to the final decision and order in accordance with HRS § 91-11. The argument is without merit.

The thrust of the statutory requirements of § 91-11 was discussed in *White v. Board of Education*, 54 Haw. 10, 501 P.2d 358 (1972), where a school teacher appealed the termination of her services. There the supreme court stated:

> The general rule is that if an agency making a decision has not heard the evidence, it must at least consider the evidence produced at a hearing conducted by an examiner or a hearing officer. *Morgan v. United States*, 298 U.S. 468, 480-481 (1936); *Younkin v. Boltz*, 241 Md. 339, 216 A.2d 714 (1966); *see also* Annotation 18 A.L.R.2d 606, 620; 2 K. DAVIS, ADMINISTRATIVE LAW TREATISE, Sec. 11.01, et seq.

*Id.* at 13, 501 P.2d at 361.

In discussing the question whether the agency gave sufficient consideration to the record and evidence, the supreme court quoted from the revised Model State Administrative Procedure Act, fourth tentative draft (1961), as follows:

> The purpose of this section [§ 91-11] is to make certain that those persons who are responsible for the decision shall have mastered the record, either by hearing the evidence, or reading the record or at the very least receiving briefs and hearing oral argument.

---

[7] "Record" as defined by HRS § 91-9(e) (1976) means:

(e) For the purpose of agency decisions, the record shall include:

(1) All pleadings, motions, intermediate rulings;

(2) Evidence received or considered, including oral testimony, exhibits, and a statement of matters officially noticed;

(3) Offers of proof and rulings thereon;

(4) Proposed findings and exceptions;

(5) Report of the officer who presided at the hearing;

(6) Staff memoranda submitted to members of the agency in connection with their consideration of the case. . . .

*Id.* at 14, 501 P.2d at 362; *see also You v. Minami,* 65 Haw. 411, 652 P.2d 632 (1982).

The record shows the Board made its decision on October 21, 1981, after "receiving briefs and hearing oral arguments" from the Appellant. The Appellant has failed to show that the Board did not satisfy the minimum requirements of HRS § 91-11 as set forth in *White.*

### D. DISQUALIFICATION OF BOARD MEMBERS

Appellant contends that two members who participated in the voting and signed the Board's final decision did so in violation of HRS § 91-11. In particular, Appellant argues that the two members were not present at the hearing on October 21, 1981, and therefore should not have participated in the decision.

Appellant argues that the minutes show that Board members Kenneth N. Sumimoto (Sumimoto) and George Goto (Goto) were not present at the October 21 hearing. The record does not support Appellant's contention as to Goto. The minutes of the October 21 meeting indicate Sumimoto was absent. Goto is not listed as present or absent. Nevertheless, the minutes show that Goto in fact was present and participated in the hearing and decision on Appellant's case.

Although Appellant describes Goto's presence as "questionable," the minutes indicate that he was there. The mere fact that he is not listed as present is not enough to overcome the presumption of validity accorded agency decisions or to satisfy Appellant's heavy burden of making a convincing showing that the decision is invalid. *In re Hawaii Electric Light, supra.* We hold that the record does not show that Goto was disqualified from voting, and the decision was made by a majority of the Board.

The general rule in this jurisdiction is that where a board or commission has decided an issue, the participation of a disqualified member in the decision will not invalidate the result where a majority exists without the vote of that disqualified member. *Waikiki Resort Hotel v. City & County of Honolulu,* 63 Haw. 222, 248-9, 624 P.2d 1353, 1371 (1981). The fact that Sumimoto signed the order is of no import, since the order is nonetheless signed by a majority of the Board.

Appellant's argument is without merit.

## E. UNREASONABLE DELAY

Appellant's last point on appeal is that the nearly four year delay in bringing a formal complaint against him adversely affected his rights and put him at a severe disadvantage in preparing a defense.

The record shows that the Board was notified of the peer review committee's adverse decision in December 1976. In December 1977, the Board voted to proceed with formal disciplinary proceedings. However, the State did not file its verified petition until August 1980. Appellant complains of the delay between the notice to the Board and the filing of the petition.

The statute under which the Board acted, HRS chapter 453, does not establish a limitation period for the institution of proceedings thereunder. In such instances, courts have held that general statutes of limitation do not provide a bar to a proceeding in which the public interest is involved, such as a proceeding to revoke a license to practice medicine, 2 Am. Jur. 2d *Administrative Law* § 322 (1962), and the question may turn on the question of laches. *Id.* § 321.

Laches, however, is not imputed from the mere passage of time and prejudice is a necessary element for its application. *Id.* Moreover, there is authority holding that the statute of limitations and the doctrine of laches do not apply to disciplinary proceedings. *Moore v. State,* 553 P.2d 8 (Alaska 1976); *Gore v. Board of Medical Quality Assurance,* 167 Cal. Rptr. 881 (1980) (Disciplinary proceeding against physician); *Wolf v. Ambach,* 464 N.Y.S.2d 244 (A.D. 1983); *Chaplan v. Ambach,* 457 N.Y.S.2d 980 (A.D. 1982) (Proceeding to revoke physician's license); *In re O'Hara,* 408 N.Y.S.2d 70 (A.D. 1978); *Spray v. Board of Medical Examiners,* 50 Or. App. 311, 624 P.2d 125 (1981).

In the instant case, it is not necessary for us to decide whether as a general rule laches apply to disciplinary proceedings such as this. Appellant has presented no facts to indicate prejudice from the pre-accusatorial delay or to show anything except the passage of time to support his argument for the application of either laches or estoppel. The argument is without merit.

## CONCLUSION

The circuit court was correct in affirming the decision of the Board in all respects and the order appealed from is affirmed.

*Edward Y. N. Kim (Kim & Kim* of counsel) for appellant.

*Russell W. O. Lum,* Deputy Attorney General, *(Donna Tanoue,* Special Deputy Attorney General, on the brief) for appellees.