MALCOLM A. SUSSEL, Appellant–Appellee, v. CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF HONOLULU; HIROO W. MIYAGI; ERNEST K. TACAZON; PATRICIA K. SALSBURY; and ISABEL M. TAGALA, individually, and in their capacities as Commission Members of the Civil Service Commission of the City and County of Honolulu, Appellees, and FRANK F. FASI, Mayor, Appellee–Appellant, and D. G. ANDERSON, Managing Director; GEORGE KEKUNA, Managing Director's Office; and LORETTA K. FUKUDA, Director of Civil Service, Additional Appellees

NO. 16424

(CIV. NO. 86–0328)

MAY 6, 1993

MOON, C.J., LEVINSON, AND NAKAYAMA, JJ., INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED, AND CIRCUIT JUDGE SPENCER, ASSIGNED BY REASON OF VACANCY

## OPINION OF THE COURT BY MOON, C.J.

In 1985, appellant–appellee Malcolm A. Sussel (Sussel), former administrator of the Oahu Civil Defense Agency (OCDA)[1] of the City and County of Honolulu (City), appealed what he claimed was his illegal demotion to the State Civil Service Commission (Commission). In 1991, the Commission ruled that Sussel had not been

---

[1] The position of OCDA administrator is provided for in § 6–104 of the Revised Charter of the City and County of Honolulu, which states:

> There shall be a civil defense agency headed by a civil defense administrator who shall be appointed and may be removed by the mayor in accordance with law. The civil defense administrator shall:
>
> (a) Develop, prepare and, under disaster or emergency situations, assist in the implementation of civil defense plans

demoted, and Sussel subsequently appealed that decision to the First Circuit Court.

In 1992, the circuit court held that the Commission had clearly erred, and that Sussel had, in fact, been demoted illegally. The court ordered that Sussel be reinstated with full retroactive restoration of lost pay and other benefits. Appellee–appellant Mayor Frank F. Fasi (Fasi) now appeals from the order of the circuit court. Both Sussel and the City have cross–appealed. We affirm the reinstatement of Sussel and the order granting Sussel ten percent interest on his back pay.

## I. BACKGROUND

The appeal and cross–appeals in this case are the latest incidents in a long–running dispute between Fasi and Sussel. Sussel was appointed to the position of administrator in June of 1982 by then–Honolulu mayor Eileen Anderson, who had defeated the incumbent Fasi in the 1980 election. Sussel, who had been serving as assistant administrator of the OCDA, had submitted an application for the job, and had been reviewed pursuant to relevant civil service procedures.

In the November 1984 mayoral race, Fasi defeated Eileen Anderson and assumed office on January 2, 1985. In December 1984, Fasi announced that George Kekuna (Kekuna) would be taking over the administration of the OCDA. Fasi had originally intended that Kekuna be

---

and programs to protect and promote the public health, safety and welfare of the people of the city.

(b) Coordinate the civil defense activities and functions of the city with those of the State and federal governments and other public or private organizations for civil defense within the State.

appointed to the position of State Deputy Director of Civil Defense for Honolulu county, a post traditionally held by the Mayor himself. However, after the State Director of Civil Defense requested that Fasi maintain tradition by assuming the role of State Deputy Director, Fasi decided to appoint Kekuna to the newly created post of "Deputy Director Designate." Although Sussel would nominally retain his position as OCDA administrator, Fasi intended that Kekuna would take over the administration of the OCDA from Sussel.

On January 2, 1985, then–City Managing Director, Andy Anderson (Anderson), met with Sussel to inform him that he would remain the OCDA administrator, but that he would be subject to the authority of Kekuna, who would actually be overseeing the agency. On January 7, Kekuna was formally introduced to the OCDA staff; all OCDA employees were informed that they were to look to Kekuna for direction and guidance concerning OCDA affairs.

On January 9, pursuant to a request by Sussel, a meeting was held in Anderson's office regarding Sussel's situation. In attendance were Sussel and his attorney, Anderson, the corporation counsel, the civil service director, and a representative from the Hawaii Government Employees Association. The city officials who attended the meeting claim that Sussel was primarily concerned that he would still have the liabilities without the actual administrative authority of his office. These same officials maintain that they subsequently arranged for the "downward reallocation" of Sussel's position in order to allay Sussel's concerns about his continuing liability. Sussel's position as OCDA administrator was thereafter changed from Executive Assistant I to Administrative Assistant II. Although Sussel continued to draw the same

salary, the change resulted in a reduction of some nine pay grades, and he was no longer eligible to receive any of the pay raises subsequently given to the rank of Executive Assistant I.

On or about January 11, Sussel was required to vacate his office, turn in his keys to the front door of the Civil Defense Office and the executive restroom as well as turn in his pager. He was also told to work only regular hours and informed that he was not to respond to emergencies; nor was he to act as the OCDA's spokesperson with the media. Kekuna assumed essentially all of Sussel's prior administrative duties as head of the OCDA.

On January 25, 1985, Sussel timely appealed to the Commission, asserting that he was a civil service employee and that under the applicable civil service rules, he had been illegally demoted because he had not received the requisite ten–day written notice of his demotion.[2] On January 7, 1986, the Commission held that Sussel was not protected by the civil service rules. Sussel then appealed to the First Circuit Court. On May 22, 1987, the circuit court reversed the Commission's ruling and held that the administrator of the OCDA was a civil service position subject to the civil service rules. The court remanded the case to the Commission for further proceedings.

Following Sussel's appeal of the Commission's ruling to the circuit court, but prior to that court's May 22 decision, Sussel filed suit in the United States District Court

---

[2] Revised Rules of the Civil Service Commission, Rule 1.1–D.10.2.c provides:

    c.    When an employee is dismissed or demoted, a written notice setting forth the specific reasons for the dismissal or demotion shall be given the employee at least ten calendar days before the effective date of such dismissal or demotion and a copy thereof shall be filed with the Director.

for the District of Hawaii, seeking damages under 42 U.S.C. § 1983 and pendent state claims for alleged violations of his federal due process rights (federal action). On December 16, 1987, the federal court entered an order staying Sussel's federal action pending final resolution of the commission proceedings and any resultant state court review.

On April 29, 1988, Sussel filed an action in the First Circuit Court (state action), which was virtually identical to the federal action. The state action defendants, comprised of the Mayor and various other city officials, removed the case to the federal district court. Prior to the institution of the state action, the federal court had vacated its stay of Sussel's initial federal claim. After the removal of Sussel's state claim to the federal court, the two actions were consolidated for trial.

On March 3, 1989, Judge Ezra of the federal district court dismissed or granted summary judgment against Sussel on all of his federal claims, his contract claims, and his claim for defamation, and remanded his remaining state law claims to the state circuit court. As part of its decision, however, the federal court specifically found that, contrary to the defendant's contention that he had merely been "downwardly reallocated," Sussel "was in fact 'demoted.'"

On appeal, the Ninth Circuit Court of Appeals affirmed most of Judge Ezra's decision on December 6, 1990; however, it vacated that part of the order regarding dismissal of Sussel's contract claims and remanded those claims so that Judge Ezra could decide whether to remand them to state court along with Sussel's other remaining state law claims. Judge Ezra subsequently remanded the contract claims to state court. On February 8, 1990, the state circuit court granted Fasi's motion to stay proceed-

ings in the remanded civil case (No. 88–1285–04), pending the final resolution of Sussel's civil service agency appeal, which had been previously remanded by the state court.

The Commission, on remand, decided to appoint a special master, Walter Ikeda, to hear Sussel's case. Ikeda conducted hearings over an eleven–day period between December 1990 and January 1991. On April 24, 1991, Ikeda issued his proposed findings of fact, conclusions of law, and decision and order. Although he ruled that Sussel had not been the victim of political discrimination as Sussel had claimed, Ikeda concluded that Sussel had, in fact, been demoted illegally because he had not received the requisite ten–day written notice prior to his demotion.

All parties were afforded the opportunity to file exceptions to Ikeda's proposed findings, conclusions, and order, and to present oral arguments to the Commission at two subsequent commission hearings in May and June 1991. On June 26, 1991, the Commission ruled contrary to its special master and found that Sussel had not been illegally demoted, but had instead been properly downwardly reallocated. The Commission accepted as its own the proposed findings of fact and conclusions of law of Fasi and the City and denied Sussel's appeal for reinstatement.

Pursuant to Hawaii Revised Statutes (HRS) § 91–14, Sussel filed an amended appeal of the Commission's order to the state circuit court on July 16, 1991. On July 29, 1992, the circuit court issued its decision and order in the case (July 29 order). The court affirmed the Commission's ruling that Sussel had not been the victim of political discrimination, but agreed with the special master and concluded that Sussel had been illegally demoted. The court also stated that the issue of Sussel's demotion was *res judicata* as the result of Judge Ezra's prior finding in federal court.

The court therefore ruled that 1) Sussel's appeal was granted; 2) the Commission's findings of fact and conclusions of law concerning the demotion issue were rejected; 3) the Commission's final decision and order were reversed; 4) the special master's proposed findings of fact and conclusions of law, and his proposed decision and order were adopted by the court and deemed to be those of the Commission; and 5) Sussel was reinstated to his position as administrator of the OCDA with full retroactive restoration of lost pay and other benefits. On July 29, the court denied Fasi's motion to dismiss or to stay Sussel's civil case No. 88–1285–04.

Fasi's subsequent motion for reconsideration of the circuit court's July 29 order was denied, and Fasi then filed a notice of appeal to this court on August 28, 1992. Sussel filed two motions for enforcement of the circuit court's decision, which the court granted. In granting Sussel's second enforcement motion, the circuit court ordered the City to pay Sussel interest on his back pay at a rate of ten percent per annum from the date of divestiture.

Fasi then moved this court for an injunction of the trial proceedings in Sussel's civil case No. 88–1285–04, pending Fasi's appeal of the circuit court's July 29 decision in Sussel's agency appeal. Trial in the civil case was scheduled to begin on September 8, 1992, but this court issued a temporary stay of the proceedings in order to hear oral argument on Fasi's motion for injunctive relief. Following oral argument, on October 16, 1992, we denied Fasi's motion for an injunction, but ruled that the instant appeal of the circuit court's July 29 order would be expedited to obviate any potential conflict between the two cases. We ordered that the civil case be scheduled to begin in May 1993, by which time the instant appeal would be decided.

As previously noted, Fasi appeals from the circuit court's order and essentially continues to claim that Sussel was not demoted and that the circuit court therefore erred in reversing the Commission's decision. Fasi also argues that the Ninth Circuit did not affirm Judge Ezra's finding that Sussel was demoted.

Sussel cross–appeals contending that the circuit court should have found that Fasi and the City violated the city charter by demoting him, and that he was, in fact, demoted for political reasons. The City and several city officials have cross–appealed from the circuit court's order, contending that Judge Ezra's finding on Sussel's demotion is not *res judicata* or collateral estoppel, and that the court erroneously ordered the City to pay Sussel interest on his back pay.

## II. DISCUSSION
### A. Fasi's Appeal
### 1. Standard of Review

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. ***Chock v. Bitterman***, 5 Haw. App. 59, 63, 678 P.2d 576, 580, *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1984). The standard of review is one in which this court

> must determine whether the [circuit] court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision. [This court's] review is further qualified by the principle that the [agency's] decision carries a presumption of validity and [a]ppellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Id.* at 64, 678 P.2d at 580 (citations and footnote omitted); *see also Dole Hawaii Division — Castle & Cooke, Inc. v. Ramil*, 71 Haw. 419, 794 P.2d 1115 (1990).

HRS § 91–14(g) provides:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g) (1985).

Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of its discretion under subsection (6). *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw. App. 633, 638–39, 675 P.2d 784, 789 (1983), *cert. denied*, 67 Haw. 1, 677 P.2d 965 (1984). Accordingly, a reviewing court will reverse an agency's finding of fact if it concludes that

such agency finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. HRS § 91–14(g)(5). On the other hand, the agency's conclusions of law are freely reviewable. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992).

### 2. **Res Judicata or Collateral Estoppel**

The principal issue in this case is whether Sussel was demoted or merely "downwardly reallocated." All parties agree that if Sussel was demoted, such demotion was illegal because Sussel did not receive the requisite ten–day written notice setting forth the specific reasons for the demotion. Revised Rules of the Civil Service Commission (RR) Rule 1.1–D.10.2.c. However, Fasi and the City[3] contend that Sussel was not demoted, and that his position as administrator of the OCDA was simply downwardly reallocated, that is, changed to a lower pay grade due to a change in the duties and responsibilities of the position.

All parties agree that prior rulings of the federal courts on various issues in this case are binding on them under the doctrine of *res judicata*. However, the parties disagree as to exactly which rulings of the federal district court and the Ninth Circuit have preclusive effect in the present case.

In the recent decision of *Pele Defense Fund v. Paty*, 73 Haw. 578, 837 P.2d 1247 (1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1277, 122 L. Ed. 2d 671 (1993), we

---

[3] For convenience, we shall hereinafter use the name "Fasi" to refer to the Mayor, the City, and the various city officials involved in this case.

reiterated the rules in this jurisdiction concerning the related doctrines of *res judicata* and collateral estoppel. After noting "the basic tenet[] of *res judicata*" that " '[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter,' " we stated that " '[c]ollateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies.' " *Id.* at 599–600, 837 P.2d at 1261 (quoting ***Morneau v. Stark Enters., Ltd.***, 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975)). We further noted that the doctrine of collateral estoppel was "tempered only by the prerequisite that a [party] have a full and fair opportunity to litigate the relevant issues" in the prior lawsuit. *Id.*

In the instant case, the federal district court specifically found that Sussel was demoted. In his decision, Judge Ezra stated:

> The City contends that [Sussel] was not "demoted." He was "reclassified" from Executive Assistant I to Administrative Assistant II, retaining the same salary level and remaining in the same department: OCDA. Therefore, it reasons, it was a "downward reallocation," not a demotion. That being the case, under this reasoning, [Sussel] was entitled to no notice or hearing under the civil service rules.

> It is not disputed that [Sussel] was stripped of his duties and benefits as Administrator of OCDA and reclassified to a salary position which deleted some of the salary increases to which he would otherwise have been entitled. This was

> accomplished by "red–circling" his salary: i.e.,
> leaving [Sussel] at a salary level higher than that
> usually accorded an Administrative Assistant II.
> *[Sussell] lost his title, his authority and his office.*
> *On these undisputed facts, this court finds that*
> *[Sussel] was in fact "demoted."*

(Emphasis added.)

There is no denying that the federal district court is a court of competent jurisdiction, that the parties in the instant case are precisely the same as those who litigated the federal case, and that the issue of Sussel's demotion, upon which Judge Ezra ruled, is precisely the same issue which confronted the special master, the Commission, and the circuit court in the present case. Therefore, under the doctrine of collateral estoppel set forth in *Pele*, we are required to give preclusive effect to Judge Ezra's finding that Sussel was demoted rather than downwardly reallocated. The Commission's decision, which violated both § 91–14(g)(4) and (5), was affected by an error of law when it failed to give preclusive effect to Judge Ezra's finding, and as a result, it then made the clearly erroneous finding that Sussel was not demoted. We therefore conclude that the circuit court was correct in reversing the Commission's decision and in reinstating Sussel.

However, Fasi contends that the issue of Sussel's demotion "was not decided by the Ninth Circuit." On December 6, 1990, by memorandum disposition, the Ninth Circuit ruled on the appeal of Judge Ezra's entire decision in Sussel's federal lawsuit. The Ninth Circuit first affirmed Judge Ezra's finding that Sussel was in a civil service position. The court then considered the "central issue" of whether Sussel had "alleged sufficient facts to support a claim for violation of due process."

The Ninth Circuit Court noted that the relevant due process analysis required it to first determine whether Sussel had a property interest in his job. The court concluded that Sussel had a property interest, but that a procedural due process analysis would be triggered only if Sussel had been terminated or demoted. After noting that Sussel had not been terminated, the court stated that "[t]he dispute is not whether demotion is an interest protected by the due process clause but whether Sussel was demoted or merely downwardly reallocated. The latter process is not protected by due process."

Fasi contends that the aforementioned language demonstrates that the Ninth Circuit "did not decide" whether Sussel was in fact demoted. However, we note that immediately after stating that a downward reallocation would not trigger a due process analysis, the Ninth Circuit proceeded to perform just such an analysis to determine whether Sussel had carried his burden of establishing a genuine issue of material fact on the due process issue. The court pointed out that due process requires notice and an opportunity for a hearing before the deprivation of a property interest. The court then held that because Sussel had met with Fasi prior to the change in his position, he had "received notice and an opportunity for hearing before any change in pay occurred." The court therefore ruled that Sussel had been afforded due process.

Clearly, if the Ninth Circuit had decided that Judge Ezra was wrong and that Sussel had not been demoted, there would have been no reason to perform a due process analysis; Sussel would not have fulfilled the threshold requirement of demonstrating a property interest implicating due process concerns. Moreover, it is undisputed that the Ninth Circuit did not vacate or reverse Judge Ezra's unequivocal finding that Sussel was demoted.

Additionally, when ruling later in its decision that Sussel had failed to establish a genuine issue of material fact on a first amendment claim, the Ninth Circuit clearly stated that "Sussel has failed to present sufficient probative evidence that he was *demoted solely* on the basis of his political affiliation" (emphasis added).

In short, contrary to Fasi's contention, the state circuit court was clearly right in stating that Judge Ezra's finding that Sussel was demoted "was essentially affirmed by the Ninth Circuit[.]" Consequently, the Commission was required to give preclusive effect to Judge Ezra's finding on the demotion issue, and this court is likewise required to affirm the ruling of the circuit court that the Commission erroneously failed to do so. Because the parties do not dispute that if Sussel was demoted, such demotion was illegal, the preclusive effect of Judge Ezra's finding is dispositive of the instant case.

### 3. **The Commission's Ruling**

Besides noting the preclusive effect of Judge Ezra's finding on the demotion issue, the circuit court ruled that, based on the whole record in the case, the Commission had clearly erred in finding that Sussel was not demoted. The court found, as had Judge Ezra earlier, that Sussel had lost his title, his authority, his office, and his opportunity for certain salary increases. The court held that these undisputed facts inescapably led to the conclusion that Sussel was demoted.

Sussel was, in fact, stripped of all his duties, responsibilities, and authority as administrator, and left with essentially nothing to do. He was dropped nine pay grades as a result, and denied any of the pay raises which would

have been due him under his former pay grade.[4] To hold that Sussel was not demoted simply because his position was downgraded while he himself was not actually moved to another position would be to elevate form over substance. From any reasonable perspective, Sussel was in fact demoted. We find it no accident that three separate factfinders who evaluated all the available evidence in this case — the special master, Judge Ezra, and the circuit court judge — all came to the same conclusion on this issue. Thus, even without the preclusive effect of Judge Ezra's ruling, we hold that, based on the record, the circuit court correctly found the Commission's finding that Sussel was not demoted to be clearly erroneous.

## B. **Sussel's Cross–Appeal**

Sussel has cross–appealed from the circuit court's decision and order. Sussel claims that Fasi violated the city charter in demoting him, and that Fasi replaced him with Kekuna for political reasons. The circuit court affirmed the Commission's finding that Fasi's actions regarding Sussel and Kekuna were not politically motivated. The circuit court reasoned that, given its decision that Sussel was illegally demoted and thus must be reinstated, resolution of the issue concerning the alleged violation of the city charter was not necessary to the disposition of the case and was therefore moot. We agree, and this court likewise need not rule on this issue. Moreover, because we agree with the circuit court that Sussel must be reinstated in any event, we also need not rule on his

---

[4] Sussel claims that he has lost at least $51,092.42 in contractually guaranteed salary increases as a result of his demotion, along with concomitant losses to his pension rights.

continuing claim that he was demoted for political reasons.

We therefore affirm the circuit court's ruling on this issue.

## C. **The City's Cross–Appeal**

Finally, the City has cross–appealed from the circuit court's order granting Sussel's second motion for enforcement of its July 29, 1992 decision and order, arguing that the circuit court erred in requiring the City to pay Sussel ten percent interest on his back pay. Essentially, the City's sole contention is that interest cannot be awarded against a municipality in the absence of express statutory authority. The City argues that because there is no such express authority in Hawaii, the circuit court had no authority to assess interest in the present case.

Conversely, Sussel maintains that the circuit court had ample authority, pursuant to HRS §§ 478–3 and 636–16, to grant him interest on his back pay.[5] HRS § 478–3 provides that "[i]nterest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit." HRS § 478–3 (Supp. 1992). HRS § 636–16 provides:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

---

[5] Sussel erroneously refers to HRS § 478–2 in his brief. HRS § 478–2 was renumbered HRS § 478–3 in 1986.

HRS § 636–16 (1985).

The City claims that interest can never be charged against it because there is no express statutory authority in Hawaii for doing so. We disagree. In fact, this court determined as long ago as 1927 that the City could be held liable for interest in a civil suit in *City and County of Honolulu v. Caetano*, 30 Haw. 1 (1927), a condemnation proceeding. This court provided a detailed summary of *Caetano* in *Lucas v. Liggett & Myers Tobacco Co.*, 51 Haw. 346, 461 P.2d 140 (1969).

> The City condemned Caetano's property, and Caetano received a money judgment to compensate him for the value. Caetano failed to ask for prejudgment interest in the suit itself. He asked for it six months after judgment had been entered, and the court refused to grant it. Before reaching this conclusion, however, it was (a) determined that although this was a condemnation case, the issue of interest would be governed by the general law since there was no special provision for interest in condemnation cases; (b) determined that the applicable statute on interest was [HRS § 478–3[6] ] . . . (c) intimated that the constitutional requirement of just compensation required that plaintiff have an opportunity to prove interest as part of his damages, and (d) clearly held that in Hawaii prejudgment interest should be allowed wherever it is properly proved.

---

[6] In *Caetano*, the court referred to RLH 1925 § 3586 which was the progenitor of HRS § 478–2, which became HRS § 478–3 in 1986. The only substantive change in the statute since 1927 is that the allowable rate of interest has risen up from six percent to eight percent to the current ten percent.

*Id.* at 350, 461 P.2d at 143–44 (footnote omitted).

Clearly, the City is not somehow immune from paying interest simply because there is no express statutory authority governing the issue. In fact, the *Caetano* court held that where there was no express statutory authority governing the payment of interest on a specific type of claim, the applicable statute was HRS § 478–3, which governs interest payments on civil judgments generally. Further, the *Caetano* court expressly held that prejudgment interest is to be allowed wherever it is properly proved. We also note that in **McKeague v. Talbert**, 3 Haw. App. 646, 658 P.2d 898 (1983), the Intermediate Court of Appeals held that under HRS § 636–16, "courts *in all civil cases* . . . have the discretion to award prejudgment interest." *Id.* at 663, 658 P.2d at 910 (emphasis added).

There is no question that the City can be held liable for prejudgment interest. Thus, the precise issue presented here is whether the circuit court abused its discretion in granting Sussel ten percent interest on his back pay in the present case. **Amfac, Inc. v. Waikiki Beachcomber Investment Co.**, 74 Haw. 85, 136–37, 839 P.2d 10, 36, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992). Clearly, under HRS § 478–3, the court was authorized to grant Sussel up to ten percent interest. And under HRS § 636–16, the court "is authorized to designate the commencement date to conform with the circumstances of each case."

Here, the court ordered the City to pay Sussel ten percent per annum from the date that he was demoted. In *Lucas*, this court noted that interest on a judgment is essentially compensatory in nature, stating that " '[i]nterest is given on money demands as damages for delay in payment, being just compensation to the plaintiff

for a default on the part of his debtor.'" 51 Haw. at 349, 461 P.2d at 143 (citation omitted). Sussel was illegally demoted. Consequently, he was illegally forced to forego every pay increase due his former pay grade since his demotion. On these facts, it is fair and reasonable that the City be forced to compensate Sussel for his loss by paying interest on the money it illegally withheld from him. We therefore hold that the circuit court did not abuse its discretion under §§ 478–3 and 636–16 in awarding Sussel ten percent interest per annum on his back pay.

## III. CONCLUSION

Based on the foregoing, we affirm both the circuit court's July 29, 1992 decision and order reversing the Commission and reinstating Sussel, and the order granting Sussel ten percent interest on his back pay.

*Steven M. Nakashima* (*Ann–Marie McKittrick* and *Natalie S. Hiu*, of Goodsill, Anderson, Quinn & Stifel, and *William C. McCorriston*, of McCorriston, Miho & Miller, with him on the briefs) for appellee–appellant Frank F. Fasi.
*Dennis W. King* (*William J. Deeley*, with him on the briefs) for appellant–appellee Malcolm A. Sussel.
On the briefs:
*Paul Devens* and *Caron M. Inagaki* of Devens, Lo, Youth, Nakano & Saito for City and County of Honolulu.