907 P.2d 101

Myra P. SMITH, Respondent–Appellant,

v.

STATE of Hawai'i, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Petitioner–Appellee, Employer/Self–Insured.

No. 17215.

Supreme Court of Hawai'i.

Nov. 6, 1995.

Reconsideration Denied Nov. 22, 1995.

Joseph P.H. Ahuna Jr., on the briefs, Kaneohe, for plaintiff-appellant-respondent Myra P. Smith.

Sherri–Ann Loo and Michael Azama, Deputy Attorneys General, on the briefs, Honolulu, for employer/self-insured-appellee-petitioner State of Hawai'i, Dept. of Labor and Indus. Relations.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this workers' compensation case, respondent-appellant Myra P. Smith, employed by petitioner-appellee, employer/self-insured

State of Hawai'i, Department of Labor and Industrial Relations (DLIR), suffered injuries while crossing a public street between her workplace at the DLIR's offices and the lot where she parked her car. Smith applied for workers' compensation benefits, and the DLIR's Disability Compensation Division (DCD) granted her claim, holding that Smith's injuries arose out of and in the course of her employment. The DLIR appealed, and the Labor and Industrial Relations Appeals Board (LIRAB) reversed the DCD, holding that Smith's injuries did not arise out of and in the course of her employment and were therefore not compensable. Smith appealed.

On appeal, the Intermediate Court of Appeals (ICA) reversed the LIRAB, holding that Smith's injuries were compensable because they arose out of and in the course of her employment. *Smith v. State of Hawai'i, Dept. of Labor and Indus. Rels.*, No. 17215 (Haw.App. Dec. 6, 1994). We granted certiorari and now hold that: (1) injuries suffered by employees while going to or from work arise out of and in the course of the employee's employment if (a) the injury occurs on the employer's premises, and (b) the employee's presence on the employer's premises was required by the nature of the employee's employment; (2) a parking lot owned, maintained, or controlled by an employer is considered part of the employer's premises for purposes of determining whether an employee's injury suffered in a parking lot arises out of and in the course of the employee's employment; and (3) an injury suffered by an employee in a public street, sidewalk, or other off-premises location that is on a direct and/or necessary route between the employer's main premises and the parking lot owned, maintained, or controlled by the employer also arises out of and in the course of the employee's employment. Because the parking lot in the present case was not owned, maintained, or controlled by the DLIR and does not qualify as part of the DLIR's premises, we hold that the injuries suffered by Smith while en route between the DLIR's offices and the parking lot where she parked her car did not arise out of and in the course of her employment. Accordingly, we reverse the holding of the ICA and order depublication of the ICA's opinion in the present case.

## I. BACKGROUND

At the time of her injury, Smith was employed by the DLIR as an employment interviewer in offices located in the Kaheka Professional Center at 1481 South King Street in Honolulu. Previously, Smith had been working at another location, but had agreed to relocate to the DLIR's Kaheka Professional Center location with the understanding that parking was available for her to rent at her expense.

The DLIR's office space lease for the Kaheka Professional Center provided the DLIR with the option to rent up to twenty stalls for parking officially-marked State vehicles in the neighboring Hale Kaheka Condominium building parking lot (Hale Kaheka), located across Liona Street from the Kaheka Professional Center. The lease also provided the DLIR's employees with the option to rent up to fifty stalls to park their personal vehicles, all at a preferred rate of $45.00 per month as opposed to the prevailing rate of $50.00 per month, in the same lot.

Prior to September 1990, the State Department of Human Services, Welfare Division (DHS), occupied the office space in the Kaheka Professional Center currently occupied by the DLIR, and, operating under identical parking provisions in its office space lease, the DHS rented fifteen parking stalls in Hale Kaheka for officially-marked State vehicles. In September 1990, the DHS relocated, and the DLIR took over the office space previously occupied by the DHS, but the DLIR did not exercise the lease option to rent parking stalls in Hale Kaheka for officially-marked State vehicles. Less than fifty DLIR employees exercised the option to rent stalls in Hale Kaheka for their personal vehicles.

Upon her relocation to the Kaheka Professional Center location, the DLIR arranged for Smith to meet with Hale Kaheka's building manager, and Smith contracted with the manager to rent a parking stall in Hale Kaheka at the $45.00 per month rate. Parking was on a first-come, first-served basis,

and Smith did not have an assigned stall. Smith made all payments for parking directly to Hale Kaheka.

On October 22, 1990, after completing her normal work shift, Smith left the office and proceeded to Hale Kaheka to retrieve her car. As Smith stepped off the sidewalk to cross Liona Street, she fell, breaking her left leg and spraining her left ankle.

On November 20, 1990, Smith filed a workers' compensation claim, and a hearing was held before the DCD on July 9, 1991. Smith argued that her injuries arose out of and in the course of her employment and were therefore compensable because: (1) she was parked in an employer-designated parking area for employees, and, as an employee, she was entitled to a discounted parking rate; (2) she was traveling in the most direct route from her office to the designated parking area; (3) the parking stall, located in a private parking lot, was available pursuant to the DLIR's office space lease; and (4) the available parking provided by the employer resulted in a mutual benefit to Smith and the DLIR because Smith was able to use private transportation to commute to work, which was personally necessary so she could drop her children off on her way to work, and the DLIR would be reasonably assured that Smith would be able to report to work on a regular basis without having transportation problems.

By decision dated September 6, 1991, the DCD held that Smith's injuries arose out of and in the course of her employment with the DLIR. The DCD paid special attention to the degree of control exerted by the employer over the parking lot, and stated:

> Based on the information on file, the Director finds that employer leases business offices from the landlord which entitles employer to selected parking spaces from the lease agreement. The Director agrees that there is a mutual benefit to employer and to its employees with the available parking. Although employer does not physically operate the parking lot, employer has control or right of control as to who may utilize the allotted parking spaces to employer. Therefore, the Director does not find the parking lot to be totally private in nature. Because the place of employment and the designated area for the employees is determined by the lease agreement reached between the employer [and] the landlord, the Director finds a special risk to employees who have to travel over the public street to get to the assigned parking area. The Director finds the principle of passage argument applies. Although employer does not physically own the parking lot, employer controls who can utilize the parking stalls available as a result of employer's rental of the business office space.

The DLIR timely appealed the DCD's decision to the LIRAB, which held a hearing on May 22, 1992. By decision dated May 26, 1993, the LIRAB reversed the DCD's decision, concluding that, based on its review of the evidence, Smith's injuries did not arise out of and in the course of her employment with the DLIR. Specifically, the LIRAB stated:

> We conclude that the Hale Kaheka condominium parking lot cannot be considered as part of the Employer's premises for a number of reasons: Employer did not own the parking lot nor did it lease any portion of the lot; Employer did not assign parking to its employees; Employer did not pay for its employees['] parking nor did it deduct the monthly parking charge from its employees' pay; the lot was not exclusively used by Employer's employees as other tenants and non-tenants utilized the parking area. When a parking lot is neither owned, maintained nor controlled by the employer, it does not constitute a part of employer's premises.

Smith appealed the LIRAB's decision to this court, and the case was assigned to the ICA. By decision filed December 6, 1994, the ICA reversed the LIRAB's decision, stating:

> We conclude that the parking lot exception to the going and coming rule applies when the parking space where the employee parks is under the control of the employer.

Thus, the dispositive question is whether Smith's parking space was under the con-

trol of the State. Since there is only one right answer to this question, it is a question of law. The [DCD's] answer was yes. LIRAB's answer was no. We agree with the [DCD].

....

... Smith contends that the connection between the State and Smith's parking space brought Smith's accident within the parking lot exception to the going and coming general rule. We agree.

The employer's ownership of an option exercisable by an employee to contract for the use of a parking space places that parking space under the control of the employment and, therefore, the employer. The employee's ability to be assigned the right to exercise the option and to enjoy the right to use the parking space after exercising the option are conditioned upon the employment.

Accordingly, we reverse the May 26, 1993 Decision and Order entered by [the LIRAB] concluding that [Smith's] October 22, 1990 injury did not arise out of and in the course of her employment. We remand for further proceedings consistent with this opinion.

*Smith,* slip op. at 4–8.

The DLIR subsequently applied for a writ of certiorari, which we granted by order filed December 22, 1994.

## II. *STANDARDS OF REVIEW*

Appeals taken from administrative agency rulings are governed by the Hawai'i Administrative Procedure Act, Hawai'i Revised Statutes (HRS) chapter 91 (1993). HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6). *Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 25, 889 P.2d 705, 709 (1995).

## · III. *DISCUSSION*

■ The sole issue on appeal in the present case is whether the damages stemming from Smith's injuries are compensable under the workers' compensation scheme because Smith's injuries arose out of and in the course of employment.

For an injury to be compensable under a workers' compensation statute, there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment.

*Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994); *see also* HRS § 386–3 (1993) ("If an employee suffers personal injury either by accident arising out of and in the course of employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer ... shall pay compensation to the employee or the employee's dependents[.]").

■ Whether an injury arises out of and in the course of employment is governed by a "unitary" test that considers whether there is a sufficient work connection to bring the accident within the scope of the statute. "[T]he work connection approach simply requires the finding of a causal connection be-

tween the injury and any incidents or conditions of employment." *Tate,* 77 Hawai'i at 103, 881 P.2d at 1249; *see also Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 649, 636 P.2d 721, 726 (1981); *Lawhead v. United Airlines,* 59 Haw. 551, 584 P.2d 119 (1978); *DeFries v. Association of Owners, 999 Wilder,* 57 Haw. 296, 555 P.2d 855 (1976); *Pacheco v. Orchids of Hawai'i,* 54 Haw. 66, 502 P.2d 1399 (1972); *Akamine v. Hawaiian Packing and Crating Co., Ltd.,* 53 Haw. 406, 495 P.2d 1164 (1972); *Royal State Nat'l Ins. Co. v. Labor & Indus. Relations Appeals Bd.,* 53 Haw. 32, 487 P.2d 278 (1971) (all applying the work connection approach).

### A. The "Going and Coming" and "Premises" Rules

As we recently reiterated in *Tate,* "[a]n injury is said to arise in the course of the employment when it takes place within the period of employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto." 77 Hawai'i at 103–104, 881 P.2d at 1249–50 (brackets in original). We went on to note that "[a]ctivities, such as seeking personal comfort, *'going and coming,'* and engaging in recreation have no inherent status as part of the employment. As distinguished from actual performance of the direct duties of the job, these activities must be established as incidents of the work itself." *Id.* at 104, 881 P.2d at 1250 (emphasis added and citations omitted).

The majority rule across the nation, termed the "going and coming" rule, is that injuries suffered by employees while going to or coming from work are not covered by workers' compensation. *See* 1 A. Larson, *The Law of Workmen's Compensation,* [hereinafter, 1 Larson] § 15.11 (1995) ("The course of employment is not confined to the actual manipulation of the tools of the work, nor to the exact hours of work. On the other hand, while admittedly the employment is the cause of the work[ers'] journey between his [or her] home and the factory, it is generally taken for granted that work[ers'] compensation was not intended to protect him [or her] against all the perils of that journey.");

1 *Modern Workers' Compensation,* § 111.1 (M. Canavan ed. 1993) ("Under the going and coming rule, travel between home and work is considered a personal activity since the employee typically performs services which benefit the employer only after his or her arrival at the place of employment; therefore, injuries occurring off the work premises during such travel are generally not compensable. Furthermore, the hazards encountered by an employee while going to or coming from the regular place of employment are not ordinarily incidental to the employment since the employee is exposed to dangers and risks to which all traveling persons are exposed.").

The "going and coming" rule, however, is subject to several exceptions. Most pertinent to the present case is the "premises" rule, which provides that injuries that occur when an employee is going or coming while still on the employer's premises are compensable if the injury arises from an employment-related risk. As we noted in *Tate,*

[i]njuries occurring on an employer's premises are covered by workers' compensation only insofar as they arise out of employment-related risks. Where an employee visits an employer's premises for a purely personal reason, an injury sustained during such a visit is not compensable. The pivotal issue in these cases is whether the employee's presence on the employer's premises at the time of the injury is required by the nature of the employment.

77 Hawai'i at 106, 881 P.2d at 1252 (footnote and citations omitted).

For purposes of the premises rule, most courts consider a parking lot owned or maintained by an employer as part of the employer's premises. *See, e.g., Bordwine v. Texas Employers' Ins. Ass'n,* 761 S.W.2d 117 (Tex. App.1988) (holding, as a matter of law, that employee was acting within the scope of her employment at the time of her accident because she arrived at her employer's premises for the purpose of going to work, parked her car in a parking lot provided by the employer for the sole use of its employees, and was injured in the parking lot as she stepped out of her car); *Lawton v. Eastman Kodak Co.,* 206 A.D.2d 813, 616 N.Y.S.2d 412 (1994)

(holding that injuries an employee sustained when struck by a vehicle in employer's parking lot arose out of and in the course of employment, even though employee alleged that he arrived at the employer's premises one half hour before he normally would have arrived for his shift); *see also generally* Annotation, *Workers' Compensation: Coverage of Injury Occurring in Parking Lot Provided by Employer, While Employee Was Going to Or Coming from Work*, 4 A.L.R.5th 443, 465–71 (1992); 1 Larson, *supra*, § 15.41.

Many courts have also expanded the premises rule to include injuries suffered by employees while en route between the employer's offices or factory and a parking lot owned, maintained, or controlled by the employer as arising out of and in the course of employment, which is often termed a "principle of passage" between two parts of an employer's premises. *See, e.g., Knoop v. Industrial Comm'n of Ariz.*, 121 Ariz. 293, 589 P.2d 1325, 1329 (1978) ("After careful consideration, we believe that the exception to the going and coming rule for travel across a public road between two portions of the employer's premises is a reasonable exception.... In this situation, ... [b]y locating the lot where it did so that petitioner had to cross [a public street], and by telling petitioner to park there, respondent employer helped create the situation which caused her accident and injury."); *Lewis v. Workers' Compensation Appeals Bd.*, 15 Cal.3d 559, 125 Cal.Rptr. 353, 357, 542 P.2d 225, 229 (1975) ("We hold that ... employees remain within the course of employment when traveling by a direct route between the facilities provided by the employer and other business premises of the employer."); *State Compensation Ins. Fund v. Walter*, 143 Colo. 549, 354 P.2d 591 (1960) (holding that, where employee is injured crossing public street bisecting premises of his employer while on his way to place where parking space is assigned to him on premises of his employer, his injuries are compensable under Workers' Compensation Act); *Proctor–Silex Corp. v. DeBrick*, 253 Md. 477, 252 A.2d 800, 807 (1969) ("Where, as here, the claimant had arrived on the premises of her employer and was proceeding without deviation of any kind directly to her work, it would be unreasonable to hold that injuries sustained by her on the parking lot or between the building entrance and the time clock would be compensable, but injuries sustained between the parking lot and the building entrance would not be compensable. Therefore, we hold the injuries sustained by [the claimant] to have arisen out of and in the course of her employment."); *see also* 1 Larson, *supra*, § 15.14(b) ("[Because] ... a parking lot owned or maintained by the employer is treated by most courts as part of the premises, most courts, but by no means all, hold that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a necessary route between the two portions of the premises"; also providing an exhaustive listing of cases supporting the proposition); 1 *Modern Workers' Compensation, supra*, § 111.14 ("In cases where the parking lot is deemed to be owned or provided by the employer for the use of the employees, the employer's premises has been expanded even further to include the direct route between the actual workplace and the parking lot. Even if the employee is traversing a public thoroughfare in order to reach the employer-provided parking lot, compensation has been awarded."); Annotation, *Workers' Compensation: Coverage of Injury Occurring Between Workplace and Parking Lot Provided by Employer, While Employee Is Going to Or Coming From Work*, 4 A.L.R.5th 585, 601–03 (1992).

■ We agree with the majority position, represented by the authorities cited above, and adopt the "going and coming" and "premises" rules, including the principle of passage between two parts of the employer's premises, as the law of Hawai'i. Therefore, we hold that: (1) injuries suffered by employees while going to or from work arise out of and in the course of the employee's employment if (a) the injury occurs on the employer's premises, and (b) the employee's presence on the employer's premises was required by the nature of the employee's employment; (2) a parking lot owned, maintained, or controlled by an employer is considered part of the employer's premises for purposes of determining whether an employee's injury suffered in a parking lot arises

out of and in the course of the employee's employment; and (3) an injury suffered by an employee in a public street, sidewalk, or other off-premises location on a direct and/or necessary route between the employer's main premises and a parking lot owned, maintained, or controlled by the employer also arises out of and in the course of the employee's employment.

### B. The Parking Lot In the Present Case Was Not Owned, Maintained, or Controlled by the Employer.

■ As Professor Larson notes, most courts hold that a parking lot owned, maintained, or controlled by an employer is treated as part of the employer's premises, and an injury in a public street or other off-premises location between the employer's main premises and the parking lot is in the course of employment, being on a necessary route between the two portions of the premises. 1 Larson, supra, § 15.14(b) at 4–60 to 4–70. "But if the parking lot is a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected." Id. at 4–70. A threshold issue in the present case, therefore, is whether the DLIR owned, maintained, or controlled the parking lot at Hale Kaheka.

It is undisputed that the DLIR did not own Hale Kaheka, nor did it have any maintenance responsibilities over it. The dispositive issue, therefore, is whether the DLIR possessed or exerted a sufficient degree of control over the parking lot at Hale Kaheka such that the lot constitutes the DLIR's "premises" for purposes of assessing whether Smith's injury arose out of and in the course of her employment with the DLIR.

On facts similar to the present case, the claimant in *Constantineau v. First National Bank in Albuquerque*, 112 N.M. 38, 810 P.2d 1258 (1991), was injured when, after parking her personal vehicle in her parking space at an adjoining parking lot at the civic center and walking through an underground tunnel to her office building, she tripped and fell on a protruding portion of the office building lobby floor. Claimant asserted that the employer possessed sufficient control over the parking lot so as to bring the case within the premises rule and the principle of passage. The New Mexico Court of Appeals disagreed, noting that:

> In this case, claimant parked her vehicle in a parking lot in the Civic Center parking facility. The parking facility was owned by the City of Albuquerque. Claimant's employer had an option to designate up to one hundred parking spaces of the total of three hundred for its use. Employer had exercised its option to use only sixty-three of those spaces and the remaining thirty-seven were therefore returned to the First Plaza's owners' management company for distribution to others. The sublease for the parking space was between claimant and the building manager. The Civic Center parking lot was the choice of claimant and *not* assigned to her by employer. Employer did not require its employees to use the Civic Center parking lot and some employees in fact did use other parking facilities. . . .
>
> . . . .
>
> . . . [W]e hold, therefore, that mere employee "use" of a parking lot is insufficient to consider the lot part of the employer's "premises."
>
> In this case, the parking lot was not owned by employer, exclusively used by claimant, or assigned by employer to claimant.

810 P.2d at 1259–60 (emphasis in original); *see also Maryland Paper Products Co. v. Judson*, 215 Md. 577, 139 A.2d 219 (1958) (facts that employer successfully petitioned city to permit angled parking, rather than parallel parking, on city street where claimant's decedent parked his car and also that employer painted lines on street, pursuant to permission from city, were insufficient to establish employer control over area where claimant's decedent parked his car so as to render area part of employer's "premises" for purposes of determining applicability of premises rule); *Tate v. Bruno's Inc./Food Max*, 200 Ga.App. 395, 408 S.E.2d 456 (1991) (injury sustained by store employee in shopping center parking lot not compensable where both shopping center store employees

and general public were allowed to use the lot, despite facts that employees customarily parked in lot, were reasonably expected to do so by employer, were directed to park farther from the store to allow customers to use parking spaces closer to store, and employer provided no other parking facility for employees).

In the present case, Smith argues that the DLIR's lease of office space in the Kaheka Professional Center provides the DLIR with sufficient control over the parking lot in Hale Kaheka because the lease provides the DLIR and its employees with the option to rent parking spaces in Hale Kaheka. The applicable provisions of the lease provide:

1.08   Exhibits and Special Provisions

All of the other provisions of this Lease notwithstanding, Landlord and Tenant have agreed to the following:

. . . .

(e) *Parking*

Up to 20 stalls for parking State cars may be rented by Tenant in Hale Kaheka during the term of the Lease at the lower of the rates shown below or the prevailing rates, plus General Excise Tax:

Year 1         $35 per stall per month
Year 2 & 3   $40 per stall per month
Year 4 & 5   $45 per stall per month

The exact number of stalls will be determined by Tenant by thirty-day written advance notice to Landlord. Each stall will have 24–hour, direct in/out access (no tandem stalls) and will be located in one area that will be readily accessible to staff and adequately lighted to insure their safety. Up to 50 stalls may be rented by Tenant's employees in Hale Kaheka during the term of the Lease at prevailing rates. Landlord agrees that Tenant's employees may also rent the unused portion, if any, of the 20 stalls allocated to Tenant.

Based on the above-quoted language in the lease, the ICA concluded that:

The employer's ownership of an option exercisable by an employee to contract for the use of a parking space during the term of the employment places that parking space *under the control of the employment* and, therefore, the employer. The employee's ability to be assigned the right to exercise the option and to enjoy the right to use the parking space after exercising the option are conditioned upon the employment.

*Smith,* slip op. at 7 (emphasis added). We disagree. It is apparent that one cannot exercise the option present in the DLIR's lease that allows DLIR employees to rent parking stalls in Hale Kaheka unless one is a DLIR employee. Therefore, the parking spaces arguably are "under the control of the employment." However, the issue at hand is whether the DLIR, as the *employer,* possesses or exerts sufficient control over the parking lot itself so as to consider the parking lot part of the DLIR's "premises," and not whether the parking space/lot is "under the control of the *employment.*" In other words, for purposes of assessing the applicability of the premises rule in the present situation, whether the option to rent parking is contingent upon the employment is irrelevant; rather, the relevant inquiry revolves around the effect that the lease provisions and the option have on the degree of control the employer has over the lot itself. In the present case, because Smith's only argument is based on the lease provisions, the outcome-dispositive question is therefore whether the lease provisions provide the DLIR with sufficient control over the Hale Kaheka parking lot so as to render the parking lot part of the DLIR's "premises" for purposes of application of the premises rule.

Our review of the language of the lease's parking provisions indicates that, at best, the lease provisions merely provide the DLIR and its employees with the opportunity to exercise an option to voluntarily enter into an independent contractual arrangement with Hale Kaheka's building management to rent parking stalls; the provisions in no way imbue the DLIR with any control over the Hale Kaheka parking lot itself. As the LIRAB correctly noted: (1) the DLIR neither owned the parking lot nor leased any portion of it; (2) the DLIR did not assign parking to its employees; (3) the DLIR neither paid for its employees' parking nor deducted the monthly parking charge for Hale Kaheka parking from its employees' pay; and (4) the lot was

not exclusively used by the DLIR's employees, inasmuch as other tenants and non-tenants utilized the parking area. Without more, we conclude that the language of the lease and presence of the option in the lease in the present case does not confer any appreciable control over the Hale Kaheka parking lot to the DLIR. Therefore, we hold that the Hale Kaheka parking lot does not constitute part of the DLIR's "premises" for purposes of application of the premises rule and the principle of passage between two parts of the employer's premises. Accordingly, Smith's injury suffered in a public street while en route from the DLIR's offices in the Kaheka Professional Center to the parking lot in Hale Kaheka did not arise out of and in the course of her employment with the DLIR, and her injury is therefore not compensable under the provisions of HRS chapter 386.

## IV. *CONCLUSION*

For the foregoing reasons, the decision of the ICA in the present case is reversed, and an order depublishing the ICA's opinion in the present case will be filed concurrently with this opinion.