145 P.3d 835

**Chuong Thanh HUA, Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES OF the EM-PLOYEES' RETIREMENT SYSTEM, STATE OF HAWAI'I, Defendant–Appellee.**

**No. 26315.**

Intermediate Court of Appeals of Hawai'i.

Sept. 8, 2006.

Reconsideration Denied Sept. 21, 2006.

**293**

2003 final decision denying Hua's application for service-connected disability retirement.

We hold that where an employee is on the employer's premises, doing what the employer requires at a time and place the employee is required to do it, the employee is engaged in the actual performance of duty for purposes of service-connected disability retirement. We therefore reverse and remand.

## I. Background.

On June 13, 1997, Hua applied to the ERS for service-connected disability retirement under Hawaii Revised Statutes (HRS) § 88–79 (Supp.2005).[2] Hua's claim arose out of an accident that occurred on January 5, 1996. That morning, Hua parked his car in the parking lot of Waipahu High School, where he worked as a School Custodian II. School policy required that Hua sign in at the main office before seven a.m., with his work commencing at seven a.m.: "At 7:00. I have to sign in before 7:00. 7:00 start. That's school policy.... Every day I have to report to work at 7:00, but I have to sign in before 7:00."

As Hua walked from the parking lot to the main office to sign in, he slipped and fell in a muddy area in front of the library. The area was dark and it had rained all night. Hua

Keith M. Kiuchi, (Kiuchi & Nakamoto), on the briefs, Honolulu, for Plaintiff–Appellant.

Courtney S. Lui and Russell A. Suzuki, Deputy Attorneys General, on the briefs, for Defendant–Appellee.

LIM, Presiding Judge, FOLEY and FUJISE, JJ.

Opinion of the Court by LIM, P.J.

In this secondary appeal, Chuong Thanh Hua (Hua or Appellant) appeals the December 5, 2003 judgment that the Circuit Court of the First Circuit (circuit court)[1] entered against him and in favor of the Board of Trustees (the Board) of the Employees' Retirement System (the ERS), State of Hawai'i. The judgment was based upon an order of even date affirming the Board's April 14,

---

**1.** The Honorable Eden Elizabeth Hifo presided.

**2.** Hawaii Revised Statutes (HRS) § 88–79 has been amended several times since the date of the accident, in ways immaterial to this appeal. HRS § 88–79 (Supp.2005) now reads, in relevant part:

(a) Upon application of a member, or the person appointed by the family court as guardian of an incapacitated member, any member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no wilful negligence on the member's part, may be retired by the board of trustees for service-connected disability; provided that:

(1) In the case of an accident occurring after July 1, 1963, the employer shall file with the board a copy of the employer's report of the accident submitted to the director of labor and industrial relations;

(2) An application for retirement is filed with the board within two years of the date

of the accident, or the date upon which workers' compensation benefits cease, whichever is later;

(3) Certification is made by the head of the agency in which the member is employed, stating the time, place, and conditions of the service performed by the member resulting in the member's disability and that the disability was not the result of wilful negligence on the part of the member; and

(4) The medical board certifies that the member is incapacitated for the further performance of duty and that the member's incapacity is likely to be permanent.

. . . .

(d) The board may determine whether or not the disability is the result of an accident occurring while in the actual performance of duty at some definite time and place and that the disability was not the result of wilful negligence on the part of the member. The board may accept as conclusive:

(1) The certification made by the head of the agency in which the member is employed; or

(2) A finding to this effect by the medical board.

fell on his left arm, injuring his elbow and wrenching his wrist. The accident occurred at 6:55 a.m. Hua acknowledges that he was not "on the clock" when he was injured, because he had not yet signed in for work.

After the accident, Hua sought and received treatment for his injuries, and applied for and received both workers' compensation and social security disability benefits. Hua elected to participate in the State's Return to Work Priority Program, but no suitable position could be located. The State Department of Education (the DOE) therefore terminated Hua's employment effective June 30, 1997. On September 30, 1997, the DOE filled out its statement certifying that the accident did not result from any wilful negligence on Hua's part. However, the DOE also certified that Hua was not "on duty" at the time of the accident.

On November 9, 1999, the Board notified Hua that it proposed to deny his application, based on the August 4, 1999 report of the ERS medical board.[3] The medical board had concluded that the accident did not occur in the actual performance of duty because Hua "was walking to work." The medical board had also concluded that Hua was "not incapacitated for the further performance of duty as a School Custodian II." Hence the medical board's recommendation to the Board that Hua be denied service-connected disability retirement.

On December 3, 1999, Hua appealed to the Board. A hearing was held almost two years later, on November 15, 2001. As stated by the hearings officer, "the general issue is under [HRS § 88–79] whether or not the Appellant meets all of the statutory requirements for service-connected occupational disability retirement benefits[.]" During the hearing, the parties stipulated that "there was an accident[.]" In addition, the ERS medical board did not dispute that Hua was "on campus" when he slipped and fell.

Dr. Rowlin Lichter (Dr. Lichter), chairman of the medical board, testified that they were unable to determine whether the accident occurred while Hua was in the actual performance of duty. Under cross-examination, Dr. Lichter explained:

Q. I want to just cover one other area about—you were unable to determine, you said, whether or not Mr. Hua's injury was service connected is that correct?

A. That's correct.

Q. And that was because he was not at the place of work at the time?

A. He was not being paid for the period in which he was injured.

Q. And that is what your understanding of the criteria would be?

A. Yes, that's—that is my understanding but through the Attorney General's interpretation of the precedent of law.

Q. So unless he was actually being paid for the time during which he was injured, it's your opinion that it would not be service connected?

A. That's correct. He's not working, he's not service connected. If he's working, he's getting paid; if he's not getting paid, he's not working. So if he's working, he's covered; if he's not getting paid, he's not working, he's not covered.

Q. What is your understanding of where he was injured?

A. In the parking lot on his way to work.

. . . .

Q. So it's your position even if he was on the way to work, that that would not be service connected?

A. I'm told that that is not acceptable.

Q. And that's based upon an opinion given to you by the Attorney General's Office?

---

3. The medical board is authorized by HRS § 88–31 (1993):

The board of trustees shall designate a medical board to be composed of three physicians not eligible to participate in the system. If required, other physicians may be employed to report on special cases. The medical board shall arrange for and pass upon all medical examinations required under this part and part VII of this chapter, shall investigate all essential statements and certificates by or on behalf of a member in connection with application for disability retirement, and shall report in writing to the board its conclusions and recommendations upon all the matters referred to it.

A. Yes, that's a legal opinion. I'm not prepared to defend it. I just worked as a—as a what, surrogate or—following the opinion of the Attorney General.

At the close of the hearing, the hearings officer asked the ERS medical board's deputy attorney general (DAG) to confirm the medical board's position regarding the actual performance of duty: "Okay, so let me understand it then. But without having the benefit of the briefs, my understanding is the Medical Board's position is that a person must be actually clocked in or within the hours of his work day, his or her work day?" The DAG explained that it is not that simple:

[DAG]: Yes, but let me explain. Let's say he was—there may be a job where you could do some work at home where you may not technically be getting paid, you may not clock in. We would still consider—we would consider that in the actual performance of duty if you were doing some work.

So it's not just simply clocking in, but it's also—there can be some exceptions to that as well. We're not making it that narrow.

The DAG later argued, however, that Hua's claim must be denied "because he was not on 'work time' when he was injured and therefore was not 'injured while in the actual performance of duty.'"

On August 19, 2002, the hearings officer submitted his recommended decision to the Board, deciding that Hua's appeal "must fail by reason of a narrow technicality in the statute; to wit, the requirement that the accident occur while the Appellant is in the actual performance of his duties." In reaching his recommended decision, the hearings officer relied upon an "implied distinction" between the workers' compensation system [4] and the ERS disability retirement system purportedly adumbrated in two workers' compensation cases, *Smith v. State, Dep't of Labor & Indus. Relations*, 80 Hawai'i 150,

907 P.2d 101 (1995), and *Tate v. GTE Hawaiian Tel. Co.*, 77 Hawai'i 100, 881 P.2d 1246 (1994).

The hearings officer analyzed those cases as follows:

In [*Smith* ], the Court defined and described the workman's compensation statutory phrase "in the course of employment" and, in so doing, effectively distinguished the ERS statutory language of "in the actual performance of duty". Furthermore, in the same decision the *Smith* court discussed the "going and coming" rule and the exceptions thereto, including accidents occurring on the employer's premises. That discourse pertained only to the workman's compensation phrase "in the course of employment", and does not resolve the issue via-a-vis [sic] the retirement statutory phrase "actual performance of duty." In fact, the *Smith* court discussed its holding in [*Tate,* 77 Hawai'i at 103, 881 P.2d at 1249]:

" 'an injury is said to arise in the course of the employment when it takes place within the period of employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto.' 77 [Hawai'i] at 103–104, 881 P.2d at 1249–50 (brackets in original). We went on to note that 'activities,' such as seeking personal comfort, 'going and coming,' and engaging in recreation have no inherent status as part of the employment. As distinguished from actual performance of the direct duties of the job, these activities must be established as incidents of the work itself. *Id.* at 104, 881 P.2d at 1250 (emphasis added and citations omitted)."

The hearings officer thus concluded that Hua's case presented "the anomalous situation where an injury is compensable under

---

**4.** HRS § 386–3(a) (Supp.2005) provides:

If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.

Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.

the workman's compensation law but, because of an interlude of a few minutes, is not compensable for purposes of the retirement law. The policy reasons are not apparent; however, the distinction is nevertheless compelling and must be acknowledged." Having decided that Hua's accident did not occur in the "actual performance of duty" as required by HRS § 88–79(a), the hearings officer declared the issue of incapacitation moot.

The hearings officer clearly felt, however, that what he perceived as the governing law compelled an unjust result:

> The Appellant finally argues that to deprive him of his claim in this instance simply because he was a few minutes away from actually working "is both an absurd result and unfair to the Appellant." Nothing could be closer to the truth, in this hearing officer's opinion. And whoever wrote that "the law is a[n] ass" was blessed with remarkable insight. Unfortunately, as much as the undersigned is reluctant to do so, the ass must nevertheless be followed to its absurd, illogical destination—in other words, the law is, unfortunately, the law.

On November 12, 2002, the Board accepted and adopted the hearings officer's recommended decision, including his recommended findings of facts and conclusions of law, in a proposed decision subject to objections. Hua filed exceptions to the proposed decision and requested a review. The Board entertained oral arguments on the exceptions on April 14, 2003.

Hua argued:

> I think what that points out is there really is no bright line. . . .
>
> I would simply argue that you have a situation here . . . where the appellant was injured on the jobsite by a muddy condition on the jobsite being where he was by the terms of his employment required to be at the time.
>
> He simply was required to be there.
>
> I mean the result is that is the interpretation is that walking on the employer's jobsite on your way to check in at work is not in the actual performance, that is indeed an absurd result.

> How is the employee supposed to appear on the jobsite if not walking on the employer's jobsite on the way to work?
>
> Even the hearings officer pointed out that the logical conclusion would be in favor of Mr. Hua.
>
> And unfortunately, he says that, as much as the undersigned is reluctant to do so, the acts [sic] must nevertheless be followed to its absurd, [il]logical destination.
>
> In other words, the law is, unfortunately, the law.
>
> With all due respect, I disagree with the hearings officer, because there is no specific Supreme Court case that states that the going and coming rule does not apply in the actual performance of duty.
>
> And more important, where the going and coming rule was actually analyzed, although be it in a workers' compensation case in [Smith], the factors that the Supreme Court looked at is where was the parking lot, was—the accident occurred on the employer's place of employment, where was the employee at the time.
>
> And the circumstances in [Smith] were different. That was a garage that was not owned by the State of Hawaii. It was injury that did not occur on State property.
>
> Here you have a situation where the injury occurred on State property. It occurred while he was a few yards away from actually signing in and reporting to work at a time that he was required to be there.
>
> So I would simply argue that the logical conclusion in this case is that it is in the actual performance of duty.

The ERS medical board argued against reliance on standards developed in the workers' compensation arena. The medical board insisted that those standards are not fungible and cannot be applied in the disability retirement context. The medical board also argued, again, that Hua was not injured in the actual performance of duty because he was not injured during working hours. On this latter point, the medical board cited, apparently for the first time, Hawai'i Administra-

tive Rules (HAR) § 6–22–2 (1989),[5] which includes in the definition of "actual performance of duty" the proviso that "the accident occurred during working hours on the work premises or at wherever the claimant's duties require the claimant to be."

Later on in the day of oral arguments, the Board entered its final decision denying Hua's application, and affirming its proposed decision and the underlying findings of fact and conclusions of law. The final decision was mailed to Hua on May 5, 2003. On June 4, 2003, Hua filed his HRS § 91–14 (1993) appeal in the circuit court.

The sole issue before the circuit court was whether the Board and its hearings officer erred in denying Hua's application on the basis that Hua was not injured in the actual performance of duty. In his opening brief to the circuit court, Hua again resorted to standards developed in workers' compensation cases. In its answering brief, the Board, like the ERS medical board below, countered with HAR § 6–22–2 and argued that the injury did not occur in the actual performance of duty because it did not happen during working hours. Also, and again in like fashion, the Board attempted to erect a firewall between workers' compensation standards and any standards that may be applicable to disability retirement.

In addition, both parties tried to claim the one Hawai'i case interpreting the phrase "actual performance of duty," *Kikuta v. Bd. of Trs. of the Employees' Ret. Sys.*, 66 Haw. 111, 657 P.2d 1030 (1983), as support for his or its position, Hua pointing out that the employee in *Kikuta* was injured on his employer's premises, and the Board emphasizing that he was injured during a work recess deemed working time by statute.

Finally, in reply, Hua offered his spin on HAR § 6–22–2, urging the circuit court not to read the phrase "during working hours" to

modify the latter clause "at wherever the claimant's duties require the claimant to be."

The circuit court heard oral arguments on November 19, 2003. After hearing from both sides, the circuit court focused on the *Kikuta* case and orally ruled:

> And I think that we could say the rest of the analysis was that [Hua's] injury took part—I mean, occurred on the premises, but it was outside the building and not in an area that was specific for the employees. It was open to all the public and to everyone else who would enter on business or otherwise. And we can say definitively that he had not actually clocked in, checked in, and so he was not technically on work. And finally, when I say not technically on work, he was not technically on working time.
>
> So it's true that we do not know the answer. But when we do not know the answer, what is left of the analysis of <u>Kikuta</u> that's applicable would appear to require that he be on working time, and he was not. But more to the point, when I do not know the answer, the law is clear that the Circuit Court has to give deference to the agency when the agency is construing the statute that was enacted and specifically the agency's duty to implement. And they have done so through their rules and through their rulings. And so the Court is not in a position, therefore, under these circumstances, to reverse.
>
> And therefore, the Court, applying that case law as to agency appeals, does give deference to the agency and its findings and its interpretation of the statute and of its own rule and, therefore, affirms.

(Underlining supplied.)

On December 5, 2003, the circuit court entered its order affirming the Board's April 14, 2003 final decision, as well as a judgment

---

5. Hawai'i Administrative Rules (HAR) § 6–22–2 (1989) defines "actual performance of duty" as follows:

 If the claimant is disabled as the natural and proximate result of an accident, the accident shall be deemed to have occurred while in the actual performance of duty even if the claimant may not have been actually engaged in performing the duties of the claimant's job;

provided that the accident occurred during working hours on the work premises or at wherever the claimant's duties require the claimant to be.
*See also State v. Kotis*, 91 Hawai'i 319, 331, 984 P.2d 78, 90 (1999) ("Administrative rules, like statutes, have the force and effect of law." (Citations omitted.)).

in favor of the Board and against Hua. Hua filed his notice of this appeal on January 2, 2004.

## II. Standards of Review.

 Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. *Chock v. Bitterman,* 5 Haw.App. 59, 63, 678 P.2d 576, 580, *cert. denied,* 67 Haw. 685, 744 P.2d 781 (1984). The standard of review is one in which this court

> must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision. This court's review is further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Id.* at 64, 678 P.2d at 580 (citations and footnote omitted); *see also Dole Hawaii Division—Castle & Cooke, Inc. v. Ramil,* 71 Haw. 419, 794 P.2d 1115 (1990).

HRS § 91–14(g) provides:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g) (1985).

Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact [ (FOF)] under subsection (5); and an agency's exercise of its discretion under subsection (6). *Outdoor Circle v. Harold K.L. Castle Trust Estate,* 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983), *cert. denied,* 67 Haw. 1, 677 P.2d 965 (1984). Accordingly, a reviewing court will reverse an agency's [FOF] if it concludes that such agency finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. HRS § 91–14(g)(5). On the other hand, the agency's conclusions of law are freely reviewable. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28, *recon. denied,* 74 Haw. 650, 843 P.2d 144 (1992).

*Sussel v. Civil Serv. Comm'n,* 74 Haw. 599, 608–10, 851 P.2d 311, 316–17 (1993) (original brackets omitted). A conclusion of law (COL) is reviewed "*de novo* under the right/wrong standard." *Troyer v. Adams,* 102 Hawai'i 399, 409, 77 P.3d 83, 93 (2003) (citation omitted). "However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Aluminum Shake Roofing, Inc. v. Hirayasu,* 110 Hawai'i 248, 252, 131 P.3d 1230, 1234 (2006) (citations, internal quotation marks and block quote format omitted).

 "A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. 'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Troyer,* 102 Hawai'i at 410, 77 P.3d at 94 (ellipsis, citations, block quote format and some internal quotation marks omitted).

### III. Discussion.

█ The question on appeal is whether Hua's accident occurred while he was in the "actual performance of duty" so as to entitle him to service-connected disability retirement under HRS § 88–79(a). The parties bring nothing new to the question on appeal, advancing essentially the same arguments they presented below to the hearings officer, the Board and the circuit court.

We turn, then, to *Kikuta,* the only Hawai'i case to address the issue of "actual performance of duty" in the disability retirement context. In that case, William P. Moriyama (Moriyama), a Tax Returns Examiner III for the State Department of Taxation, was brutally assaulted by his brother-in-law in the employees' lounge during his afternoon coffee break. Moriyama later died of his injuries. Although the hearings officer recommended granting the application filed on behalf of Moriyama's estate, the Board denied the application, and the circuit court affirmed. *Kikuta,* 66 Haw. at 112–13, 657 P.2d at 1032.

On appeal, the supreme court reversed and held that Moriyama was injured while in the actual performance of duty. The *Kikuta* court's analysis follows, in its entirety:

> Whether the decedent was injured "while in the actual performance of duty," ... presents a somewhat more serious problem. We think, however, that the hearing officer correctly construed the quoted statutory language when he wrote:
>
>> The decedent was at his place of employment, the Department of Taxation building, during the hours of work usual for State employees. He was not, literally speaking, examining a tax return. However, it would be absurd to say that the State requires four hundred and sixty minutes of actual poring over tax returns each working day from a Tax Returns Examiner III. Surely, an employee is in the actual performance of his duties at the time he is using the rest room, or even when his superior stops by to repeat the latest joke he had heard. Also, the legislature, in its wisdom, chose to differentiate between lunch periods and "coffee breaks" or recesses. It specifically states that lunch periods do not constitute working time, Sec. 80–1, HRS, while it did not lay down such an edict on recesses, Sec. 80–2, HRS.
>>
>> Decedent, therefore, was at his place of employment, in an area set aside for his use at recess time, and the assault occurred during working time—the recess.
>
> We agree with the hearing officer that the interpretation placed upon the statute by the Board and by the circuit court could very well lead to other absurd and unjust results. Suppose the decedent had been on his way to the water cooler when he was assaulted? Or suppose he was at his desk having his coffee break when he was attacked?
>
> The decedent was on his "working time" when he was injured. HRS § 80–1. He was on an authorized ten-minute recess at the time. *See* HRS § 80–2. This break in the working routine has been viewed as a benefit to the employer on the plausible theory that "a refreshed employee is often a more productive one." *Pacheco v. Orchids of Hawaii,* 54 Haw. 66, 69, 502 P.2d 1399, 1401 (1972). He was injured on working premises—in an area which was part of the office complex where he worked. The room where he was attacked had been specifically set aside for the use of employees who were either resting or having their coffee breaks. And it was so used by the tax office employees. In these circumstances, we find that the decedent was injured "while in the actual performance of duty at some definite time and place." ....
>
> Reversed.

*Kikuta,* 66 Haw. at 117–18, 657 P.2d at 1034–35.

On the one hand, *Kikuta* supports the Board's position that an employee must be "on the clock" in order to be in the actual performance of duty. On the other hand, *Kikuta* also supports Hua's position that an employee remains in the actual performance of duty when on the employer's premises engaged in authorized, work-related activity.

Certainly, *Kikuta* does not address the situation where, as here, an employee is required by the employer to check in at the workplace shortly before actual duties are to commence.

The *Kikuta* court relied upon HRS ch. 80, entitled "Hours of Work," in its identification of the relevant "working time." However, the legislature repealed that chapter in 2000. 2000 Haw. Sess. L. Act 253, § 133 at 914. As the circuit court observed below:

> THE COURT:....
>
> While in the interim Chapter 80's been repealed, it's now been replaced by whatever the collective bargaining agreements are, and I don't believe those are in evidence here.
>
> [Hua's counsel]: That's correct.

That is why the spat between the parties over whether the HAR § 6–22–2 proviso "during working hours" modifies both clauses of the phrase, "on the work premises or at wherever the claimant's duties require the claimant to be[,]" or only the former, seems somewhat beside the point, because the rule itself now begs the question what "working hours" are in any particular employee's case, including Hua's case.

More to the point, HAR § 6–22–2, which was first made effective on January 9, 1984, about a year after *Kikuta* was published, seems to make the time the injury occurred or the place the injury occurred—or both, if one accepts the Board's interpretation of the rule—a necessary precondition to disability retirement. The vast universe of government employment is just not that simple, and HAR § 6–22–2 cannot make it that simple, as the DAG herself illustrated:

> [DAG]: Yes, but let me explain. Let's say he was—there may be a job where you could do some work at home where you may not technically be getting paid, you may not clock in. We would still consider—we would consider that in the actual performance of duty if you were doing some work.
>
> So it's not just simply clocking in, but it's also—there can be some exceptions to that as well. We're not making it that narrow.

We prefer an interpretation of *Kikuta* that takes into consideration the constellation of circumstances—working hours, work premises and work activity, to name a few, not one of which is necessary nor sufficient—in determining whether a claimant's accident occurred in the actual performance of duty. Under this flexibly manifold approach, we cannot shake the conclusion that Hua's accident did. Where an employee is on the employer's premises, doing what the employer requires at a time and place the employee is required to do it, surely the employee is engaged in the actual performance of duty. The contrary conclusion would, we believe, be "unjust and unreasonable in its consequences." *Sussel*, 74 Haw. at 608, 851 P.2d at 316 (citations and block quote format omitted). Worse yet, it would be contrary to compelling common sense. Indeed, if this were a workers' compensation case, Hua's claim would without question fall squarely into the heartland of the "employment-related risk" doctrine described in the *Tate* case:

> The pivotal issue in these cases is whether the employee's presence on the employer's premises at the time of the injury is required by the nature of the employment. For example, an injury sustained by an employee who, while on vacation, visits the employer's premises in order to gather nuts for his personal consumption is not compensable. By contrast, where an employer requires that an employee come to the workplace to pick up a paycheck, an injury sustained by the employee while on premises is compensable.

*Tate*, 77 Hawai'i at 106, 881 P.2d at 1252 (citations omitted).

We realize that our last citation, to a workers' compensation case, contaminates the quarantine on workers' compensation standards sought by the Board in disability retirement cases. We confirm that we cited intentionally, and that we did so fully cognizant of the Board's arguments in that regard.

We have, after all, held that the two systems are entirely separate, and that a workers' compensation decision is not binding in the disability retirement arena, in part because there is no presumption of compensa-

bility in disability retirement as there is in workers' compensation:

Finally, the Board argues that the court erred in ordering the Board to affirm the recommendations of the hearings officer. The Board asserts that the hearings officer's recommendations were based on the [Labor and Industrial Relations Appeals Board (LIRAB)] decision that Feliciano's injuries were service-connected under the state workers' compensation law, and the court's ruling makes the LIRAB decision on causation binding on the Board. The Board maintains that that result is erroneous because the burden of proof under the workers' compensation law is different from that for the disability retirement program. We agree.

The workers' compensation statute creates a presumption that a claim thereunder is for a covered work injury. HRS § 386–85 (1976).[6] There is no comparable presumption in the retirement system statutes and the two statutory programs are entirely separate.[7] We perceive no legislative intent in the language of the workers' compensation law to make the presumption applicable anywhere else in the law. Likewise, we find no legislative intent in the Employees' Retirement System Law to have the findings of the LIRAB binding on the Board.

*Feliciano v. Bd. of Trs. of the Employees' Ret. Sys.*, 4 Haw.App. 26, 34, 659 P.2d 77, 82 (1983) (original footnotes omitted). Why, then, does no less an exemplar than the supreme court cite a workers' compensation case in analyzing a disability retirement case? *Kikuta*, 66 Haw. at 118, 657 P.2d at 1035 (citing *Pacheco, supra* ).

Again, we have recognized a liberal construction standard in favor of workers' compensation claimants that finds no counterpart in the disability retirement context:

We have traditionally construed HRS § 386–3 liberally, in favor of awarding compensation, because our legislature has decided that work injuries are among the costs of production which industry is required to bear. Further, the paramount purpose of our workers' compensation law is to provide compensation for an employee for all work-connected injuries, regardless of questions of negligence and proximate cause. Courts should therefore give them a liberal construction in order to accomplish their beneficent purposes. This liberal construction is supported by our legislature's enactment of HRS § 386–85 (1985), which provides that a claim for workers' compensation is presumed to be compensable.

*Ostrowski v. Wasa Elec. Servs., Inc.*, 87 Hawai'i 492, 496, 960 P.2d 162, 166 (App.1998) (emphasis, footnotes, citations and internal quotation marks omitted). At the same time, however, we must also recognize the supreme court's description of the Board as a trustee, owing a fiduciary duty to administer the ERS for the benefit of the members of the system. *Honda v. Bd. of Trs. of the Employees' Ret. Sys.*, 108 Hawai'i 212, 221, 118 P.3d 1155, 1164 (2005).

We think the apparent contradiction is just that, apparent. The reconciliation lies in the distinction between consulting and considering workers' compensation standards in deciding disability retirement cases, and being bound by them. Indeed, the ERS's own rules recognize this distinction:

Any determination of the Workers' Compensation Division of the Department of Labor and Industrial Relations and of the Labor and Industrial Relations Appeals Board relating to the same injury for which the applicant or claimant is claiming a disability or death benefit may be taken into consideration; however, such determination shall not be binding upon the medical board.

**6.** HRS § 386–85(1) (1993) provides:

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury[.]

**7.** *See e.g.*, Sen. Stand. Comm. Rep. No. 561, in 1969 Senate Journal, at 1091 ("Your Committee is also of the opinion that Workmen's Compensation benefits and retirement benefits are two distinct and separate benefits and the receipt of one should not affect the other."), regarding an amendment to the retirement law.

HAR § 6–22–5 (1984). Accordingly, we will continue to feel free to consult and consider workers' compensation cases and standards in deciding disability retirement cases, fully cognizant all the while of the unique and entirely separate natures of the two systems, and of the ultimate caveat that a determination in one is not binding in the other.

## IV. Conclusion.

In light of the foregoing, we vacate the December 5, 2003 judgment and the order of the circuit court, and remand for further proceedings consistent with this opinion.